# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

JOHN M. FULGHUM,

    Plaintiff,

    vs.

CAROLYN W. COLVIN,

    Defendant.

Case No.: 4:13-cv-00978-KAW

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT AND REMANDING CASE FOR FURTHER PROCEEDINGS

John Marcus Fulghum ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant"). Pending before the Court are the parties' cross-motions for summary judgment. Having considered the papers filed by the parties and the administrative record, the Court GRANTS Plaintiff's motion for summary judgment, DENIES the Commissioner's motion for summary judgment, and REMANDS this case, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this order.

## I.     BACKGROUND

Plaintiff is a 47-year-old resident of Livermore, California, where he has resided in Section 8 housing since 2008. (Administrative Record ("AR") at 143, 341.) He has an associate's degree in liberal studies, and a paralegal certificate that he obtained in 2000. (*Id.* at 42, 189.) His medical records reveal diagnoses of psychosis, anxiety, bipolar disorder, delusional disorder, posttraumatic stress disorder, major depressive disorder, recurrent, severe, with psychotic features, panic disorder

without agoraphobia, degenerative joint disease, hypertension, hernia, and osteoarthritis of the right hip.  (*Id.* at 275, 289, 294, 315 346, 353, 365.)  His symptoms include anxiety, panic attacks, auditory hallucinations, difficulty concentrating, memory problems, and pain while walking and sitting.  (*Id.* at 33, 36, 42.)

He has a history of alcohol dependence and drug use, which began when he was a juvenile.[1] (*Id.* at 37, 38, 342).  At the time of the hearing, Plaintiff testified that he was "not using any drugs or alcohol" but that "if somebody was to come over or something like that then [he] might have some social use, you know, have a drink socially or something."  (*Id.* at 37.)  He admitted that he has "tried a lot of different types of drugs" in the past.  (*Id.* at 38.)

As for more recent drug use, he testified that he "may have smoked a little marijuana maybe a couple of months ago or something like that but right now [he's] steering away. . . ."  *(Id.)*  He also stated that he had not used any other illegal drugs in the last five years, though he admitted to using cocaine 15 years ago, PCP 20 years ago, and LSD 22 or 23 years ago.  (*Id.* at 41.)  According to Plaintiff, he still experiences his symptoms during periods when he has stopped drinking.  (*Id.* at 39.) He stated that he had not consumed alcohol in the month prior to the hearing, and that in 2007, he went a whole year without drinking alcohol or using drugs.  (*Id.* at 40.)

Plaintiff has a sporadic work history, consisting of "odds and end[s] type of things," with no single job lasting more than one month.  (*Id.* at 30, 31, 184.)  Plaintiff previously applied for Supplemental Security Income ("SSI"), and his claim was allowed on October 2, 2003.  (*Id.* at 151, 152.)  These benefits ceased in January 2009, after Plaintiff received $70,000 as an inheritance that he failed to report to the Social Security Administration ("SSA").  (*Id.* at 151, 152, 243, 282). Plaintiff explained that his then payee had left, leaving him unable to show how he spent the

---

[1] Both the Commissioner and the ALJ emphasize Plaintiff's "colorful criminal history" without addressing what bearing, if any, his criminal history has on the disability determination at issue.  *See* AR at 55; Def.'s Mot. Summ. J. at 4, 5.  In any event, the Court notes that the most recent addition to Plaintiff's criminal history was his incarceration at San Francisco County Jail back in 2006.  AR at 152.

United States District Court
Northern District of California

United States District Court
Northern District of California

inheritance, which he had exhausted by the time he filed another claim for SSI in April 2009.[2]  (*Id.* at 152.)

### A.      Plaintiff's application for Social Security benefits

Plaintiff filed a Title XVI application for SSI on April 8, 2009.  (AR at 58.)  In his application, Plaintiff alleged that he became disabled on May 1, 2003.[3]  (*Id.*)  Plaintiff alleged disability based on the following conditions:  psychosis, hypertension, arthritis in his hips and knee, hernia surgery, migraine headaches, confusion, and panic attacks.  (*Id.* at 183.)  The SSA denied Plaintiff's application initially and on reconsideration.  (*Id.* at 60-64, 66-70.)

### B.      The medical evidence in the record

####         1.      Dr. Hughey's opinion

Dr. Brent Hughey evaluated Plaintiff on April 30, 2009.  (*Id.* at 278.)  He issued a report on May 12, 2009, in which he indicated that his comprehensive mental evaluation was akin to a psychiatric evaluation and that he did not administer any testing.  (*Id.*)  The following materials appear in the "Records Reviewed" section of Dr. Hughey's report:  "Applicant's Supplemental Statement of Facts for Medi-Cal, Undated PES Exit Disposition, John George Psychiatric Pavilion, Alameda County Medical Center, 06/22/2007."  (*Id.*)

Dr. Hughey noted that the 06/22/2007 PES Exit Disposition from John George Psychiatric Pavilion listed alcohol intoxication and alcohol dependence as Plaintiff's only diagnoses.  (*Id.* at 278-279.)  He noted that during the evaluation, when Plaintiff was asked about the last time he used alcohol or drugs, he responded, "after a very long pause," by stating:  "Maybe six months.  One joint six months ago."  (*Id.* at 280.)

Dr. Hughey indicated that when he asked Plaintiff about being hospitalized at John George Pavilion on a 5150 hold, Plaintiff stated:

---

[2] During his psychological evaluation with Dr. Hughey, Plaintiff indicated that he spent the money on a Suburban, credit cards, fast food, and Hennessy.  AR at 278.

[3] Plaintiff amended his alleged onset date to April 8, 2009, the date he filed his application for SSI.  *Id.* at 29, 243.

> Well, um, well, first time something was telling me—ya know it was 911, military was on me.  I turned my truck over, a dog bit me and I didn't remember if I knocked the dog's teeth out and I was jumping over a wall needing to run.  Some rays were hitting my head, you know, I got down at this neighborhood, I couldn't tell where I was at . . . .

(*Id.* at 281.)  With respect to the Plaintiff's second hospitalization at John George Pavilion on another 5150 hold, Dr. Hughey noted the following:

> [Plaintiff] stated that the second time occurred 'I think I had a drink or two then' and that he was jogging on a track and picked up a hurdle.  Apparently this was in area of a construction at a college.  Asked if he was under the influence Mr. Fulgum again said, "Well one drink ya know.  Maybe she poisoned me . . .' with regards to some other person such as a girlfriend.

(*Id.*)

Dr. Hughey also noted Plaintiff's complaints about hearing voices:

> [Plaintiff] initially stated, 'All my life.'  He stated that he was thinking that the 'T.V. was talking directly to [him]' at around age 20.  He stated however that it was not until 2003 that he heard voices and he 'went to the Social Security Office because [he] had no insurance."  Interestingly the client was asked why he simply did not go to an emergency room for treatment earlier, rather than understand the ability to go to social security to obtain benefits before seeking treatment.  The client then reported, 'I was also hearing voices turning to the right or turning to the left when I was driving.' He stated that he felt that he was 'directed' in driving one night and '[he] was having one of these freak offs' in 2003. The client was asked to define his 'freak off' which he stated, 'Well a girlfriend came over with a boy he was two years old and they left and the VISA was not working, so then I went to my wallet and I had the same exact amount in my pants. I drove through Sunol Grade and had this feeling of tapping.  I didn't want to[.]  I heard this voice say 'up the road you will see a black car with black windows hit that car on the side. . . .' The client later stated that it was a police vehicle with DEA agents and 'they take off and I take off.'  Asked how he knew he said, 'The CHP pulled me over and they came over and they let me go.'

(*Id.* at 282.)

Dr. Hughey diagnosed Plaintiff with alcohol dependence and a history of alcohol intoxication with possible psychotic symptomatology.  (*Id.* at 283.)  He recommended that Plaintiff be referred to a substance abuse program.  (*Id.* at 284.)  He assigned Plaintiff a GAF score of 50-60[4] and opined that:

---

[4] A Global Assessment of Functioning ("GAF") score ranges from zero to 100 and is used to rate social, occupational, and psychological functioning on a hypothetical continuum of mental health. *Sigmon v. Kernan*, No. CV 06–5807 AHM (JWJ), 2009 WL 1514700, at *9 n.3 (C.D. Cal. May 27, 2009).  The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning.  *Id.*  A GAF score of 51 to 60 indicates only moderate difficulty in functioning.  *Atkinson v. Astrue*, No. 2:10–cv–02072–KJN, 2011 WL 4085414, at *10

While Mr. Fulghum reports a history of anxiety and psychosis, it is of interest to note that the client for many years has never sought out treatment. Indeed, with the exception of what is likely to be substance abuse induced anxious or psychotic symptomatologies, many of his symptoms can be explained through a combination of being in the context of such substance abuse and/or selective presentation of information. Indeed, such selectivity is quite evident given the denial of any hallucinatory or other psychotic symptomatology or history noted in the John George Pavilion,[5] but emphasizing it at the time of this examination. It is of particular interest to note that the client's current prescription medication regime (Vicodin, Lorazepam, Cogentin/Benzatropine) are quite consistent medications with individuals attempting to a get a "prescription high" given the generally elevated and positive sensations obtained through the use of such medications including Cogentin.

Furthermore, despite the client's statements of occasional voices even though he reports that they have occurred throughout his whole life, Mr. Fulghum displayed no apparent psychotic symptomatology whatsoever. Again this further emphasized the probability that such symptom presentation may be for secondary gain issues and/or highlighted for the purposes of this evaluation even though such symptoms may occur while under intoxication. Likewise the fact that the client tended to minimize his substance use, but then earlier reported consuming $60 of Hennessey daily only to then attempt to minimize the consumption amount was another example of such selective presentation.

(*Id.* at 284.)

       2.     <u>Dr. Molla's opinion</u>

Dr. Mithu Molla completed a comprehensive internal medicine evaluation on August 15, 2009. (*Id.* at 312.) In his report, Dr. Molla noted that Plaintiff was "unable to give a very coherent history, and that [h]e jumps from topic-to-topic." (*Id.*) He also noted that Plaintiff reported developing bad mental problems after a relationship with a girlfriend, who Plaintiff said poisoned him by putting things in his drinks. (*Id.*) During the evaluation, Plaintiff stated: "My brain would split in half. I would sleep all day and then the whole day would pass." (*Id.* at 312.)

---

(E.D. Cal. Sept. 13, 2011). People in that category may have flat affects, circumstantial speech, occasional panic attacks, few friends, or conflicts with coworkers. *Id.*

5 The Court notes that the 06/22/2007 John George PES Evaluation is not included in the record and that Dr. Hughey's description of the evaluation conflicts with Dr. Khalsa's description, which references a psychosis diagnosis. *Compare* AR at 284 *with* AR at 434. Even the ALJ acknowledged that Plaintiff "was previously seen at John George Psychiatric Pavilion in April 2004 for psychosis and in June 2007 on an alcohol-related admission," even though the 2007 records were not included in Plaintiff's file. *Id.* at 16, 43. The Court questions whether the ALJ's mere acknowledgment of these missing records is consistent with his heightened duty to develop the record in cases where a claimant is mentally impaired. *See Dervin v. Astrue*, 407 Fed. App'x 154, 156 (9th Cir. 2010).

United States District Court
Northern District of California

United States District Court
Northern District of California

Dr. Molla also noted that Plaintiff denied alcohol and intravenous drug abuse but admitted to smoking medical marijuana to relax and for hypertension.  (*Id.* at 313.)  Dr. Molla diagnosed Plaintiff with a psychiatric disorder, not otherwise specified, and a probable hernia, which could not be confirmed on physical examination.  (*Id.* at 315.)

### 3.  Dr. Fortani's opinion

Dr. Maryam Fortani evaluated Plaintiff on August 4, 2010 and completed a doctor's confidential report. [6]  (*Id.* at 337.)  She diagnosed Plaintiff with bipolar disorder and a history of psychosis, right hip osteoarthritis, and lower back pain due to degenerative disc disease.  *(Id.)*  She indicated that Plaintiff reported hearing voices, and she recommended that Plaintiff "be evaluated by psych." *(Id.)*  In the "Alcohol and Other Drugs" section of her assessment, Dr. Fortani checked "no" next to "Alcoholism," "Recovering Alcoholic," "Drug Abuse," and "Recovering Drug Abuser." (*Id.* at 338.)

### 4.  Katrina Steer, LCSW

On September 2, 2010, Katrina Steer evaluated Plaintiff and completed a mental health clinician's confidential report.  (*Id.* at 339.)  She identified Plaintiff as suffering from "bipolar mood disorder with psycho." (*Id.* at 340.)  She opined that Plaintiff's mental health condition had persisted for 12 months or more and that it would prevent him from working.  (*Id.* at 340.)  In the "Alcohol and Other Drugs" section of her report, she checked "No" next to "Alcoholism" and "Drug Abuse" and "Yes" to "Recovering Drug Abuser." *(Id.)*

### 5.  Dr. Khalsa's opinion

Dr. Puran Khalsa assessed Plaintiff on February 18, 2011 and completed a psychological report on February 20, 2011.  (*Id.* at 341.)  He noted that Plaintiff has a history of being hospitalized for psychotic symptoms since 2005.  *(Id.)*  Dr. Khalsa diagnosed Plaintiff with delusional disorder, posttraumatic stress disorder, major depressive disorder, recurrent, severe, with psychotic features,

---

[6] In his decision, the ALJ refers to exhibit 11F as a medical statement completed by a Dr. Reitari in August 2010.  AR at 18.  Exhibit 11F consists of the statements completed by Dr. Fortani and Katrina Steer.  *Id.* at 337-340.  It is unclear why the ALJ attributes one of these medical statements to a Dr. Reitari.  During the administrative hearing, Plaintiff clarified that Dr. Fortani completed the August 2010 medical source statement.  *See* AR at 45 ("Her name is located at the bottom of the page which is the same date as the evaluation on 11F which is why I ascertained that that was her signature.").

United States District Court
Northern District of California

panic disorder without agoraphobia, and alcohol dependence in early full remission.  (*Id.* at 346.)

He noted that, as an adult, Plaintiff "has periods of problematic binge drinking," and "is no longer

alcohol dependent but admits to drinking 2 to 3 times per week but only drinks 1 to 2 drinks at a

time." (*Id.* at 342.)

Dr. Khalsa concluded that "Mr. Fulghum's presentation is completely delusional." (*Id.* at

347.)  He also opined that "[b]ecause this delusional process does not appear to be related to another

disorder or medical condition, it is difficult to locate the exact onset and cause of this disturbance."

(*Id.* at 347.)  Dr. Khalsa further noted that:

> [W]hile alcohol and substance abuse may have been a problem for Mr. Fulghum in the past
> that was certainly not the case at the time of th[e] assessment. He was not intoxicated or in
> withdrawal during the assessment and he was normally oriented with normal cognitive
> functioning.  Such a performance as documented in this assessment would be nearly
> impossible if he was intoxicated or in withdrawal. It is extremely unlikely that his delusional
> problems were caused by alcohol intoxication while leaving the rest of his cognitive
> capacities intact. Alcohol related disturbances are typically associated with other verbal,
> memory, an[d] attention limitations not seen in Mr. Fulghum's test scores.

(*Id.* at 347.)

### 6.   Sausal Creek medical records

Treatment records from Sausal Creek Outpatient Stabilization Clinic show that Plaintiff

received treatment on August 27, 2007 and April 15, 2009. (*Id.* at 264-277.)  On August 27, 2007,

Plaintiff complained that he needed medication for anxiety.  (*Id.* at 268.)  He reported that he

suffered anxiety attacks and that his "voices" were "commenting on migraines." (*Id.* at 273.)

Plaintiff indicated that his first contact with a psychiatrist had been two years earlier.  (*Id.*)  He also

stated that he was prescribed psychiatric medications but did not take them.  (*Id.*)  While Plaintiff

admitted to alcohol use, drug screen results were negative.  (*Id.*)

Dr. Stuart Gluck diagnosed Plaintiff with psychosis, NOS, hypertension, and migraines.  (*Id.*

at 275.)   He assigned Plaintiff a GAF score of 45.[7]  (*Id.*)  Dr. Gluck also noted Plaintiff's two

---

[7] People with a GAF score of 41 to 50 have "serious symptoms" or a serious impairment in social,
occupational or school functioning. *Williamson v. Astrue*, No. EDCV 12–00364–CW, 2013 WL
141544, at *4 n.5 (C.D. Cal. Jan. 10, 2013).

United States District Court
Northern District of California

hospitalizations at "JGP," including a April 2004 hospitalization for psychosis and a June 2007 hospitalization for alcohol.  (*Id.* at 274.)

On April 15, 2009, Plaintiff returned to Sausal Creek, complaining that he did not have any medications and that his symptoms seemed "bad."  (*Id.* at 264.)  Plaintiff stated that he suffered from anxiety and daily audio and visual hallucinations.  (*Id.*)  Dr. Stuart Gluck indicated that Plaintiff's reported anxiety "sound[ed] far more like paranoia."  (*Id.* at 272.)  He noted that Plaintiff reported no significant drug use in the past, but admitted to using marijuana "very rarely."  (*Id.*)  Dr. Gluck also noted Plaintiff's 2007 psychosis diagnosis.  (*Id.*)

### 7.   Axis Community Health records

Treatment records from Axis Community Health contain notations of psychosis, anxiety, multiple panic attacks, psychotic depression, right hip osteoarthritis, bipolar disorder, degenerative joint disease, hypertension, and pain.  (AR at 289, 291, 292, 348.)  Plaintiff visited Axis on April 16, 2009, June 9, 2009, September 17, 2009, January 23, 2010, August 4, 2010, April 2, 2011, and May 3, 2011.  (*Id.* at 289, 291, 292, 348, 349, 353, 356, 357.)

### C.   The administrative hearing and the ALJ's decision

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 71.)  A hearing was set for March 8, 2011, which, at Plaintiff's request, was continued to June 16, 2011 so that he could obtain counsel.  (*Id.* at 115, 119.)

Following the June 16, 2011 hearing, the ALJ issued an unfavorable decision.  (*Id.* at 12-22.)  He concluded that while Plaintiff was under a disability, a substance use disorder was a contributing factor material to that determination.  (*Id.* at 12.)  In reaching his decision, the ALJ followed the five-step sequential process that governs Social Security disability determinations.  *See* 20 C.F.R. § 416.920(a).

At step one, the ALJ found that there was no evidence of substantial gainful activity since April 8, 2009, the alleged onset date.  (AR at 14.)  At step two, the ALJ found that Plaintiff has the following severe impairments:  obesity, osteoarthritis of the right hip, and polysubstance abuse.  (*Id.*)  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1. *(Id.)* At step four, the ALJ found that based on all of Plaintiff's impairments, including his substance abuse disorder, Plaintiff has the physical residual functional capacity to perform medium work,[8] but "cannot mentally sustain work activity." *(Id.* at 15.) The ALJ found Plaintiff "generally credible as to his limitations, when considering polysubstance use." *(Id.* at 18.)

At step five, the ALJ determined that "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform." *(Id.* at 19.)

With respect to Plaintiff's substance abuse, the ALJ found (1) "[i]if the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments," (2) "[i]if the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.9209d))," (3) "[i]if the claimant stopped the substance use, he would have the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c)," and (4) [i]if the claimant stopped the substance use, considering his age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 416.960(c) and 416.966). (AR at 19, 20, 21.)

In making these findings, the ALJ described Plaintiff's substance abuse as "pervasive in the record." *(Id.* at 19.) He concluded that Plaintiff failed to prove that any mental limitations would persist absent drug or alcohol use and that without substance use, Plaintiff would not suffer from any mental impairment. *(Id.* at 19, 20, 21.) The ALJ noted Dr. Hughey's statement that Plaintiff's "lack of consistent vocational history could be explained by his polysubstance dependent lifestyle, in addition to incarceration." *(Id.* at 19.) The ALJ also placed "great weight" on Dr. Hughey's report

---

[8] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, . . . he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

United States District Court
Northern District of California

1    because it was "consistent with the treatment records," and he gave "less weight" to the consultative

2    examiner's mental assessments because "he did not render an opinion of the claimant's mental

3    functioning absent substance use."  (*Id.* at 20.)

4        Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision.  (AR at

5    8, 250-262.)  The Appeals Council denied review on November 30, 2012, and the ALJ's decision

6    became the final decision of the Commissioner.  (*Id.* at 1-4, 6.)  Plaintiff now seeks judicial review

7    of that decision pursuant to 42 U.S.C. § 405(g).  (Compl., Dkt. No. 1.)

## II.      LEGAL STANDARD

9        A court may reverse the Commissioner's denial of disability benefits only when the decision

10   is 1) based on legal error or 2) not supported by substantial evidence in the record as a whole.  42

11   U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is

12   "more than a mere scintilla but less than a preponderance."  *Id.* at 1098.  It is "such relevant evidence

13   as a reasonable mind might accept as adequate to support a conclusion."  *Smolen v. Chater*, 80 F.3d

14   1273, 1279 (9th Cir. 1996).  In determining whether the Commissioner's findings are supported by

15   substantial evidence, the court must consider the evidence as a whole, weighing both the evidence

16   that supports and the evidence that undermines the Commissioner's decision.  *Id.* "Where evidence is

17   susceptible to more than one rational interpretation, the [Commissioner's] decision should be

18   upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  The court, however,

19   may not affirm the Commissioner's decision "simply by isolating a specific quantum of supporting

20   evidence."  *Id.* (internal quotations and citations omitted).  Furthermore, the court's review is limited

21   to the reasons the ALJ provided in the disability determination.  *Connett v. Barnhart*, 340 F.3d 871,

22   874 (9th Cir. 2003); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The court "may not

23   affirm the ALJ on a ground upon which the he did not rely.").

## III.      ANALYSIS

25       Plaintiff moves for summary judgment, seeking reversal of the Commissioner's final

26   decision, and remand for further proceedings or, in the alternative, for payment of benefits, pursuant

27   to sentence four of 42 U.S.C. § 405(g).  (Pl.'s Mot. Summ. J. at 2.)  He argues that reversal of the

28   Commissioner's decision is warranted because the ALJ erred in (1) determining the materiality of his

United States District Court
Northern District of California

alcohol use, (2) evaluating medical opinions, (3) identifying his severe impairments, and (4) assessing his credibility.  (*Id.* at 4.)

### A.   The ALJ erred when he determined that drug addiction or alcoholism was a contributing factor material to the disability determination.

Plaintiff argues that the ALJ erred in finding that Plaintiff's substance use disorder was a contributing factor material to the disability determination for three reasons (1) there is no substantial evidence in the record to support a finding that Plaintiff suffers from drug addiction or alcoholism ("DAA"), (2) even if Plaintiff did suffer from DAA, the ALJ imposed too high a burden of proof by requiring him to demonstrate a period of sobriety to show that DAA was not material, (3) Plaintiff provided substantial evidence that he would remain disabled absent DAA, thereby carrying his burden at steps one through four.  (Pl.'s Mot. Summ. J. at 7.)

In opposition, the Commissioner argues that the ALJ's determination was supported by the consultative examiner's report, that the record is replete with evidence of DAA, and that the record contains a number of inconsistent statements by Plaintiff regarding his DAA.  (Def.'s Mot. Summ. J. at 8, 9.)  She asserts that "[i]ndividuals who are polysubstance abusers are not entitled to benefits." (*Id.* at 10.)

The governing law does not support the Commissioner's position, as it contemplates payment of benefits to claimants who suffer from DAA so long as the condition is not material to the determination of disability.  *See* 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for the purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."); 20 C.F.R. § 416.935(b)(2)(ii) ("If we determine that your remaining limitations are disabling, you are disabled independent of your DAA and we will find that your DAA is not a contributing factor material to the determination of disability.").  Moreover, to the extent that the Commissioner asks that the Court affirm the ALJ's decisions based on justifications not relied upon by the ALJ, the Court disregards her arguments, as review is limited to the reasons the ALJ provided.  *See Connett*, 340 F.3d at 874; *Orn*, 495 F.3d at 630 (The court "may not affirm

the ALJ on a ground upon which he did not rely.").  Despite the Commissioner's arguments to the contrary, the ALJ erred in evaluating the materiality of Plaintiff's alcohol or substance use.

      1.   <u>Substantial evidence does not support the ALJ's finding that Plaintiff suffers from DAA.</u>

Plaintiff argues that while he has a history of alcohol use and even alcohol dependency, there is no medical evidence that his use arose to the level of a current substance use disorder.[9]  (Pl.'s Mot. Summ. J. at 8.)  He contends that nearly all the physicians that examined him, with the exception of Dr. Hughey, did not find that he suffered from a substance use disorder.  *(Id.)*  He asserts that any references in the record of drug and alcohol use are scattered at best, and do not support a finding of current abuse.  *(Id.* at 9.)

The record supports these contentions.  Dr. Molla, who evaluated Plaintiff on August 15, 2009, noted that Plaintiff denied alcohol and intravenous drug abuse but admitted to smoking medical marijuana to relax and for hypertension.  (AR at 313.)  Despite these notations, Dr. Molla diagnosed Plaintiff with a psychiatric disorder, not otherwise specified, and a probable hernia, which could not be confirmed on physical examination.  *(Id.)*  Dr. Fortani evaluated Plaintiff on August 4, 2010.  *(Id.* at 337.)  In the "Alcohol and Other Drugs" section of her assessment, Dr. Fortani checked "no" next to "Alcoholism," "Recovering Alcoholic," "Drug Abuse," and "Recovering Drug Abuser." *(Id.* at 338.)  She diagnosed Plaintiff with bipolar disorder and a history of psychosis, right hip osteoarthritis, and lower back pain due to degenerative disc disease.  *(Id.* at 337.)  Following her September 2, 2010 evaluation of Plaintiff, Katrina Steer checked "No" next to "Alcoholism" and "Drug Abuse" and "Yes" to "Recovering Drug Abuser" in the "Alcohol and Other Drugs" section of her report.  *(Id.)*

Dr. Khalsa, who evaluated Plaintiff on February 18, 2011, diagnosed Plaintiff with alcohol dependence in early full remission.  *(Id.* at 346.)  Dr. Khalsa noted that "while alcohol and substance abuse may have been a problem for [Plaintiff] in the past that was certainly not the case at the time

_____

[9] Plaintiff principally argues that there was no evidence of a substance use disorder, relying on the language of Social Security Ruling ("SSR") 13-2p.  As SSR 13-2p was neither issued nor effective at the time of the ALJ's July 20, 2011 decision, Plaintiff's reliance on the ruling is misplaced.  *See* 2013 WL 621536, at *1.

United States District Court
Northern District of California

1    of his assessment." (*Id.* at 347.)  He also indicated that Plaintiff was "normally oriented with normal

2    cognitive functioning," a state which would be "nearly impossible if he was intoxicated or in

3    withdrawal." (*Id.*)  Dr. Khalsa opined that "it is extremely unlikely that his delusional problems

4    were caused by alcohol intoxication while leaving the rest of his cognitive capacities intact.  Alcohol

5    related disturbances are typically associated with other verbal, memory, an[d] attention limitations

6    not seen in [Plaintiff's] test scores." (*Id.*)

7         Treatment records from Sausal Creek Outpatient Stabilization Clinic and Axis Community

8    Health are also free of any reference to a substance abuse disorder.  (*Id.* at 264-77, 289-311, 348-

9    375.)  Dr. Gluck's treatment notes from August 2007 contain references to alcohol use, but also

10   show that drug screen results were negative.  (*Id.* at 273.)  They also reflect diagnoses of psychosis,

11   NOS, hypertension, and migraines.  (*Id.* at 275.)  Treatment notes from April 15, 2009 are similar,

12   mentioning that Plaintiff reported no significant drug use in the past and admitted to using marijuana

13   "very rarely." (*Id.* at 272.)

14        Plaintiff's testimony is consistent with the medical evidence.  At the administrative hearing,

15   he testified that he was "not using any drugs or alcohol" but that "if somebody was to come over or

16   something like that then [he] might have some social use, you know, have a drink socially or

17   something." (*Id.* at 37.)  He admitted that he has "tried a lot of different types of drugs" in the past.

18   (*Id.* at 38.)

19        As for more recent drug use, he testified that he "may have smoked a little marijuana maybe

20   a couple of months ago or something like that but right now [he's] steering away. . . ." (*Id.*)  He also

21   stated that he had not used any other illegal drugs in the last five years, though he admitted to using

22   cocaine 15 years ago, PCP 20 years ago, and LSD 22 or 23 years ago.  (*Id.* at 41.)  He explained that

23   he still experiences his symptoms during periods when he has stopped drinking.  (*Id.* at 39.)

24        Notwithstanding all of the above, and his own finding that Plaintiff "cannot mentally sustain

25   work activity," the ALJ, instead, relied on the opinion of Dr. Hughey in concluding that "[w]ithout

26   substance use, the claimant has no mental impairment." (AR at 15, 21.)  Dr. Hughey was the only

27   physician who diagnosed Plaintiff with alcohol dependence, in part, based on records from John

28   George Pavilion that are not included in the administrative record.  *See* AR at 43-44 ("Well, . . . Dr.

United States District Court
Northern District of California

1   Huey [PHONETIC] the consultative examiner refers to 2007 records from John George

2   [PHONETIC] and I can't find them in this file anywhere.").  He also opined that many of Plaintiff's

3   symptoms could be "explained through a combination of being in the context of such substance

4   abuse and/or selective presentation of information."  (*Id.* at 284.)  When viewing the record as a

5   whole, however, Dr. Hughey's opinion is not substantial evidence.  *See Gallant v. Heckler*, 783 F.2d

6   1450, 1456 (9th Cir. 1984) (an ALJ cannot reach a conclusion first, then attempt to justify it by

7   ignoring competent evidence in the record that supports the opposite result).

8        For these reasons, the Court concludes that the ALJ's finding that Plaintiff currently suffers

9   from DAA is not supported by substantial evidence.

10           2.   <u>The ALJ erred when he required Plaintiff to establish a period of sobriety in</u>
     <u>order to show that his DAA was not material.</u>

11        Plaintiff argues that the ALJ imposed too high a burden on Plaintiff, requiring him to prove

12   that his DAA was immaterial by demonstrating a period of abstinence.  (Pl.'s Mot. Summ. J. at 11,

13   12.)  According to Plaintiff, requiring a period of sobriety raises the applicable standard from

14   substantial evidence to "higher than beyond a reasonable doubt."  (*Id.* at 12.)  On this point, the

15   Commissioner asserts the ALJ's approach "in no way amounts to an elevated 'burden of proof'" and

16   that the ALJ properly determined that there were no medical records covering a period when

17   Plaintiff was not abusing alcohol or drugs.  (Def.'s Mot. Summ. J. at 11.)

18        The Commissioner's argument is unpersuasive.  Under controlling Ninth Circuit law, "[t]he

19   claimant bears the burden of proving that his substance abuse is not a material contributing factor to

20   his disability."  *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007).  The ALJ apparently

21   interpreted this to mean that a claimant must establish a period of sobriety in order to make this

22   showing.  *See* AR at 21.  True, a period of sobriety would be diagnostically ideal in the sense that it

23   would eliminate DAA as a variable and thus allow for a more straightforward disability

24   determination.  *Petit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000) ("Determining whether a claimant

25   would still be disabled if he or she stopped drinking is, of course, simpler if the claimant actually has

26   stopped.") (citation omitted).  The Commissioner, however, offers no authority for the proposition

27

28

14

that a period of sobriety is required.  (*See* Def.'s Mot. Summ. J. at 11.)  Indeed, requiring a period of sobriety would seem to render a materiality determination unnecessary. [10]

> For this reason, the Court finds that the ALJ committed legal error when he required Plaintiff to establish a period of sobriety in order to show that DAA was not material to the disability determination.  On remand, the ALJ shall follow the correct framework in conducting the disability analysis, including the determination of whether Plaintiff has established that his DAA, if any, was not material.

**B.     The ALJ improperly weighed the medical evidence in the record.**

> A treating physician's opinion is entitled to more weight than the opinion of a non-treating physician.  20 C.F.R. § 404.1527(c)(1)-(2).  It is entitled to controlling weight if well-supported and consistent with the other substantial evidence in the record.  *Id.* § 404.1527(d)(2).  When a treating doctor's opinion is not contradicted, an ALJ may reject it only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (internal quotations and citation omitted).  But when a treating, or an examining, physician's opinion is contradicted by the opinion of another doctor, an ALJ may reject it based on "specific and legitimate reasons supported by substantial evidence in the record . . . ."  *Id.* (internal quotations and citation omitted).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

> In assessing Plaintiff's physical limitations, the ALJ "accord[ed] great weight to Dr. Molla's assessment as well as the state agency's consultants, who found no severe physical impairments." (AR at 18.)  He "accord[ed] little weight to Dr. Reitari's assessment because it [was] not supported by objective clinical findings documented in the treatment records."  *(Id.)*  With respect to Plaintiff's mental impairment, the ALJ "conclude[d] that the claimant probably could not sustain competitive

---

[10] SSR 13-2p states that "there does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability."  *See* 2013 WL 621536, at *1.  The Court, however, declines to rely on this as a basis to reverse the ALJ because the SSR was not issued until February 20, 2013, well after the ALJ's July 20, 2011 decision.

United States District Court
Northern District of California

United States District Court
Northern District of California

employment, based on the assessment of Dr. Khalsa and Katrina Steer."  *(Id.)*  He also accorded "some weight to Dr. Hughey," noting his opinion that Plaintiff "has exhibited a very inconsistent work history, due in part to polysubstance use."  *(Id.)*  Though he had placed "great weight" on the state agency's consultants opinions when they found no severe physical impairments, he placed "less weight" on their opinions when they "found the claimant able to perform simple repetitive tasks," reasoning that it "seem[ed] inconsistent with [Plaintiff's] difficulty when using drugs and alcohol, as demonstrated by his admissions to John George Psychiatric Pavilion."  *(Id.)*

In another part of his opinion, the ALJ wrote:  "In finding no other mental impairment, I accord great weight to Dr. Hughey's report, as it is consistent with the treatment records.  I accord less weight to the state agency's consultant's mental assessments, as he did not render an opinion of the claimant's mental functioning absent substance use."  (AR at 20.)  The ALJ went on to discredit Dr. Khalsa's opinion that Plaintiff was "in sustained remission of alcohol and substance abuse" and Katrina Steer's notations of no drugs or alcohol in her assessment.  *(Id.)*  The ALJ stated:

> These statements do not persuade me.  There are no treatment records reflecting remission or involvement in any substance cessation program.  At the hearing, the claimant admitted that the last time he smoked marijuana was two months ago and that he last consumed alcohol one month ago.  Additionally, he testified that the last time he was clean and sober for a full year was 2007.

> Thus, the overwhelming evidence here is that the claimant continues to abuse illicit drugs and alcohol, and that he has not been clean and sober for any appreciable period of time that would enable a reliable assessment of his functioning in the absence of substance abuse.

As to this portion of the ALJ's opinion, Plaintiff contends that the ALJ (1) placed improper weight on the opinion of Dr. Hughey, a one-time consultative examiner, (2) ignored treating source evidence, and (3) gave too little weight to other examining sources.  (Pl.'s Mot. Summ. J. at 14.)  The Commissioner argues that the ALJ placed appropriate weight on the consultative examiner's opinion, that he could not have ignored treating source opinion because no such opinion was provided, and that he properly evaluated the opinions of other examining physicians.  (Def.'s Mot. Summ. J. at 11, 12, 13, 14.)

///

///

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 1.   Dr. Hughey's opinion

Plaintiff argues that the ALJ improperly assigned the greatest weight to Dr. Hughey, the psychological consultative examiner, because his opinion was "consistent with the treatment records." (Pl.'s Mot. Summ. J. at 15.) Plaintiff contends that this reason is not specific and legitimate because (a) Dr. Hughey's opinion is actually inconsistent with the treatment records, (b) his report contains faulty assumptions and internal inconsistencies, and (c) the ALJ was required to consider other factors in weighing the evidence. (*Id.* at 16.)

As discussed *supra* Part III.A.1, the Court agrees that the ALJ's reason for assigning great weight to Dr. Hughey's opinion is not specific and legitimate.

### 2.   Treating source opinions

Medical evidence includes "[o]bjective medical evidence, that is, medical signs and laboratory findings" and "[o]ther evidence from medical sources, such as medical history, opinions, and statements about treatment." 20 C.F.R. § 404.1512(b)(1)-(2). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

According to Plaintiff, he received regular treatment from Axis Community Health from April 10, 2009 to May 3, 2011. (Pl.'s Mot. Summ. J. at 14.) He argues that the ALJ erred by disregarding these treating source opinions without giving specific, legitimate reasons for doing so and by failing to discuss what, if any, weight he placed on medical records from Axis. (*Id.*) Plaintiff contends that the ALJ incorrectly considered those medical records to support his finding that Plaintiff does not have an impairment in social functioning, but otherwise failed to consider the other mental health diagnoses and symptoms documented in the records, including the complete absence of any reference to drug or alcohol use. (*Id.*) The Commissioner persuasively argues that the ALJ did not err in evaluating a treating physician's opinion because no such opinion was provided. (Def.'s Mot. Summ. J. at 11.)

The record contains medical records from Axis, not a medical opinion from any physician, psychologist or other acceptable medical source.  *See* AR at 288-311, 348-75.  For this reason, Plaintiff's argument that the ALJ erred when he rejected the medical opinion of a treating source fails.

Nonetheless, Plaintiff's alternative argument—that even if the records from Axis Community Health did not constitute a medical opinion, the ALJ nonetheless erred when he failed to properly address the evidence regarding Plaintiff's mental condition and failed to assign it proper weight—is well-taken.  *See* 42 U.S.C. § 423(d)(5)(B) ("In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner . . . shall consider all evidence available in such individual's case record . . . . "); *cf. Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (noting that an ALJ needed not discuss evidence that is neither significant nor probative).  The ALJ shall remedy this deficiency on remand.

### 3.    Other examining sources

Plaintiff also argues that the ALJ erred in evaluating medical evidence from Dr. Gluck and Dr. Khalsa.  (Pl.'s Mot. Summ. J. at 18, 19.)  The Commissioner contends that the medical evidence from Dr. Gluck does not constitute a medical opinion and that the ALJ properly placed little weight on Dr. Khalsa's opinion.  (Pl.'s Mot. Summ. J. at 14.)

With respect to Dr. Gluck, Plaintiff argues that the ALJ's failure to provide reasons for rejecting the medical information available from Dr. Gluck makes it unclear whether he considered these records in his findings.  (*Id.* at 18.)  Thus, irrespective of whether the medical information Dr. Gluck provided was a medical opinion, the Court agrees that the failure to consider it altogether was improper.  *Cf. Howard*, 341 F.3d at 1012 (noting that an ALJ needed not discuss evidence that is neither significant nor probative).  This is especially so given that Dr. Gluck's treatment notes address Plaintiff's mental condition, which are central to the disability determination at issue in this case.  (*See* AR at 364-277.)

As for Dr. Khalsa's medical opinion, the ALJ assigned it less weight than the opinion of Dr. Hughey.  (*See* AR at 20.)  Plaintiff argues that the ALJ did so without providing specific and legitimate reasons supported by substantial evidence in the record and without properly weighing the

factors set forth in 20 C.F.R. § 416.927(d).  (Pl.'s Mot. Summ. J. at 18, 19, 20.)  The ALJ placed less weight on Dr. Khalsa's opinion because the doctor's statement that Plaintiff was in "sustained remission of alcohol and substance abuse . . . . d[id] not persuade [the ALJ]."  (AR at 20.)  The ALJ went on to note that there are no treatment records reflecting remission or participation in a substance cessation program and that Plaintiff admitted to smoking marijuana and drinking alcohol in the months prior to the hearing, with 2007 being the most recent year in which he maintained a 12-month period of sobriety.  *(Id.)*

These reasons are not specific and legitimate.  As Plaintiff indicates, Dr. Khalsa did not diagnose Plaintiff with alcohol dependence in sustained remission, but alcohol dependence in early full remission.  (AR at 346.)  Moreover, early full remission does not reduce to a period of complete sobriety; it denotes that for a period of at least one month but less than 12 months, an individual does not meet the criteria for substance abuse or dependence.  Am. Psychiatric Ass'n, <u>Diagnostic & Statistical Manual of Mental Disorders</u> 195-96 (4th ed. 2000).  For this reason, the ALJ's emphasis on the lack of demonstrated sobriety does not disturb Dr. Khalsa's opinion.

Accordingly, the ALJ's reasons for placing little weight on the opinion are not specific and legitimate.[11]

**C.      The ALJ erred when he incorrectly identified Plaintiff's severe impairments.**

At step two, the ALJ determines whether a claimant's impairment or combination of impairments is "severe."  *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).  Step two is a "de minimis screening device used to dispose of groundless claims."  *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (internal quotations and citation omitted).  Under the de minimis step two standard, "an impairment or combination of impairments may be found not severe *only if* evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Webb*, 433 F.3d at 686-87 (internal quotations and citation omitted).  If a claimant's subjective complaints correspond with doctors' diagnoses, and the doctors do not dismiss plaintiff's

---

[11] Plaintiff's additional argument that the ALJ failed to address the factors set out in 20 C.F.R. § 416.927(d) is also well-taken, but given the Court's conclusion, the point does not bear extensive discussion.

1  complaints as unfounded, there is "no inconsistency sufficient to doom his claim as groundless under

2  the de minimis standard of step two." *Id.* at 688.  A severe impairment is one that has more than a

3  minimal effect on an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1521(a),

4  416.1521(b).  "Basic work activities are the abilities and aptitudes necessary to do most jobs."

5  *Smolen*, 80 F.3d at 1290 (internal quotations and citation omitted).

6       The ALJ found that Plaintiff's severe impairments include obesity, osteoarthritis of the right

7  hip and polysubstance abuse.  (AR at 14.)  Plaintiff argues that the ALJ erred (1) by finding that

8  polysubstance abuse is a severe impairment and (2) by failing to identify psychosis, depression,

9  bipolar disorder, and delusional disorder as severe impairments.  (Pl.'s Mot. Summ. J. at 21.)  The

10  Commissioner argues, among other things, that even if the ALJ erred at step two, the error was

11  harmless because the ALJ continued to the remaining steps in the disability determination.  (Def.'s

12  Mot. Summ. J. at 16, 17, 18.)

13       The Commissioner's position lacks merit.  Here, as Plaintiff argues, the ALJ failed to find

14  that Plaintiff has severe mental impairments, which, as discussed above, are documented throughout

15  the record.  This misstep precluded a proper analysis of the combined effect of Plaintiff's limitations

16  for the purposes of his residual functional capacity assessment.  The error, therefore, is not harmless,

17  as a proper consideration of Plaintiff's impairments would have informed an entirely different

18  residual functional capacity assessment.  The ALJ shall accordingly revisit the residual functional

19  capacity assessment on remand.

20       **D.    The ALJ discredited Plaintiff's testimony without providing clear and convincing reasons.**

21

22       In evaluating a claimant's testimony regarding the severity of his symptoms, an ALJ must

23  engage in a two-step inquiry.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation

24  omitted).  An ALJ must first "determine whether the claimant has presented objective medical

25  evidence of an underlying impairment which could reasonably be expected to produce the pain or

26  other symptoms." *Lingenfelter*, 504 F.3d at 1036 (internal quotations and citations omitted).  At this

27  step, a claimant need not show that his impairment "could reasonably be expected to cause the

28

United States District Court
Northern District of California

severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id.* (internal quotation and citations omitted).

If a claimant meets this first prong and there is no evidence of malingering, the ALJ must then provide "specific, clear, and convincing reasons" for rejecting a claimant's testimony about the severity of his symptoms. *Id.* When an ALJ finds a claimant's testimony unreliable, the ALJ "must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citations omitted). It is "not sufficient for the ALJ to make only general findings . . . ." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (ALJ required to point to specific facts in the record which undermine a claimant's complaints).

In assessing a claimant's credibility, the ALJ must consider, in addition to the objective medical evidence, the claimant's daily activities, the location, duration, frequency, and intensity of the claimant's pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms, treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms, any measures, other than treatment, the claimant uses or has used to relieve pain or other symptoms, and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 SSR LEXIS 4 (July 2, 1996).

The ALJ found Plaintiff "generally credible as to his limitations, when considering polysubstance use." (*Id.* at 18.) With respect to Plaintiff's physical impairments, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (*Id.* at 21.) He based this finding on Dr. Hughey's observation that "the claimant has a tendency to present himself in a manner . . . for the purposes of obtaining social security and he gave an evasive and hesitant historical account of substance use history." (*Id.* at 23.)

Plaintiff argues that his testimony about his limitations should have been accepted, and that the reasons the ALJ provided for rejecting that testimony are not clear and convincing. (Pl.'s Mot.

United States District Court
Northern District of California

1  Summ. J. at 23, 24.)  The Commissioner argues that the ALJ properly determined that Plaintiff was

2  only generally credible.  (Def.'s Mot. Summ. J. at 18, 19.)

3       The ALJ did not articulate clear and convincing reasons for discrediting Plaintiff's testimony.

4  As discussed above, the ALJ's findings with respect to Plaintiff's drug addiction and alcoholism are

5  not supported by substantial evidence, and for this reason, the ALJ's reliance on these findings in

6  connection with his credibility determination is misplaced, as is his reliance on Dr. Hughey's

7  medical opinion.  Moreover, that Plaintiff's testimony was inconsistent with the ALJ's residual

8  functional capacity assessment is also not a clear and convincing reason for discrediting Plaintiff's

9  testimony, as the assessment itself was flawed to the extent it did not incorporate all of Plaintiff's

10  severe impairments.

11       Accordingly, the ALJ improperly discredited Plaintiff's testimony without providing clear

12  and convincing reasons for doing so.

13  **IV.    CONCLUSION**

14       For the reasons set forth above, Plaintiff's motion for summary judgment is GRANTED.  The

15  Commissioner's motion for summary judgment is DENIED.  Pursuant to sentence four of 42 U.S.C.

16  § 405(g), this case is REMANDED for further proceedings consistent with this order.

17       The Clerk shall close this case.

18       IT IS SO ORDERED.

19

20  DATE: August 5, 2014

21  KANDIS A. WESTMORE
   United States Magistrate Judge

22

23

24

25

26

27

28